Graham, Yost, Meyers & Graham and Morton Meyers, all of Johnstown, Pa., for plaintiff.

Scanlan & Harkins, and Edward J. Harkins, all of Johnstown, Pa., for defendants.

GIBSON, District Judge.

The complainant seeks to have the court set aside, with proper relief, a verbal lease from the defendant, Marie C. Bracken, to the Mineral Point Coal Company for the "C" vein of coal in a 20-acre tract of land near Johnstown, Pennsylvania. The Coal Company was represented in the transaction by Paul E. Henise, its president, without any authority from the Board of Directors, and without any authority conferred upon him by the by-laws of the Company.

At the present time Walter B. Bracken, the complainant, and Marie C. Bracken, one of the defendants, own all the capital stock of the Coal Company, each having 165 shares. The Directors are Walter B. Bracken and Gertrude A. Bracken, his wife, and Paul E. Henise and T. A. Stevenson.

Prior to 1933 Michael J. Bracken, whose stock is now held by his widow, Marie C. Bracken, was president of the Company and in active management of it. Paul E. Henise was a bookkeeper under him. Walter B. Bracken was a resident of Chicago and inactive in the operation of the Company.

Previous to 1922 the Company was operating a lease, known as the "Wilson Lease". About that year practically all the coal had been removed from the tract. In March, 1922, the Company purchased a 35-acre tract of coal land from the Bethlehem Steel Company for a consideration of $15,000, and the land was set up as an asset of the Company on its books under the heading "Mineral Land" in the amount of the purchase price. About this time it was "discovered" that a 20-acre tract separated the Wilson and the Bethlehem Steel tracts. Its owner has exercised no dominion over it recently, and his failure to do so induced Michael J. Bracken to cause the tract, theretofore unassessed, to be assessed as the property of the estate of his father, Michael Bracken, and later (in 1924) to be sold by the Treasurer of the County for non-payment of taxes. Upon the sale it was bought by Michael J. Bracken with moneys of the Mineral Point Coal Company. The records of the County Treasurer's Office show the purchaser as M. J. Bracken, but the amount paid from the funds of the Company, $75.83, was entered as an asset of the Company, in the same way that the Bethlehem Steel purchase had been entered, under the heading "Mineral Land". It was later noted that although the surface and mineral rights of the tract had been duly assessed and returned the

County Treasurer had failed to include the mineral rights in his advertisement of the sale. Thereupon a second sale of the tract for nonpayment of taxes followed in 1928 upon assessment of 1925. Again the purchase money was provided by the Company, and the deed, never recorded, was not lifted until 1940 by the former attorney for M. J. Bracken and the Company and the then attorney for Marie C. Bracken and the Company. However, the Company, in calm confidence that ostensible title to the tract would be obtained, in 1922 began the removal of the B prime coal in the tract, and by 1930 had practically exhausted it. Distribution of the proceeds of the coal mined was made in exactly the same way that proceeds of coal mined from the Wilson tract had been made. A royalty was paid to the estate of Michael Bracken, father of M. J. Bracken, and a haulage amount to the estate of Patrick Bracken, father of Walter B. Bracken, and the balance was divided among the stockholders.

Walter B. Bracken, living in Chicago and not active in the operation of the Mineral Point Coal Company, had no knowledge respecting the 20-acre tract until 1936. Then, getting some inkling of it, he wrote to the defendant Henise, then president of the Company, and was then told it had been purchased for the Company. The first intimation of ownership claimed by Marie C. Bracken came to him in 1940, when Henise, by letter, suggested that the Company lease the tract from her for the production of its "C" vein of coal. The complainant replied to Henise's suggestion, refusing his consent to such a lease, but Henise, as stated supra, went ahead with his proposed lease and in operating under it in violation of the by-laws of the Company.

In addition to the fact that the purchase money for the tract paid to the County Treasurer came from the Mineral Point Coal Company, and that the tract was mined of its "B" coal by that Company, it will be noted that the taxes upon it have been continuously paid by the Company from the time of the Treasurer's sale to the present.

■ Under the facts and circumstances hereinbefore detailed, it seems plain that, as between Michael J. Bracken or his successors and the Mineral Point Coal Company a resulting trust in favor of the Coal Company was created when the Treasurer's deed named M. J. Bracken as the purchaser of the 20-acre tract.

■ The defendants Marie C. Bracken and Paul E. Henise base their main defense upon the Pennsylvania Act of April 22, 1856, P.L. 532, 12 P.S. § 83. That Act is, in part, as follows: "No right of entry shall accrue, or action be maintained * * * to enforce, any implied or resulting trust as to realty, but within five years after such * * * trust accrued, with the right of entry; unless such * * * trust, shall have been acknowledged by writing to subsist, by the party to be charged therewith, within the same period: Provided, That as to any one affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same * * *."

These defendants assert that the complainant, by reasonable diligence, might have discovered the existence of the 20-acre tract and the deed of it to Michael J. Bracken more than five years prior to the present action, and not having done so is precluded from a decree herein.

The complainant did learn of the existence of a tract of land between the Wilson and the Bethlehem Steel Company tracts early in 1936, and at once began to investigate concerning it. He first learned that title to it had been taken in the name of M. J. Bracken by letter of F. B. Bracken (then a stockholder of the Company) dated December 7, 1936, which date was less than five years from the time of bringing this action. Just what would constitute "reasonable diligence" on the part of an absent stockholder and director of a close corporation, such as the Mineral Point Coal Company, which was actively operated by his close relative, is open to dispute. The only "fraud" which can properly be charged against Michael J. Bracken, under the evidence, is more or less collateral to the present action. It existed in his operation of the 20-acre tract as though it were part of the Wilson lease and his payment of royalty upon coal mined therein to his father's estate and a cartage allowance to the estate of Patrick Bracken. Admitting that to have been a fraud, it was not based upon a claim of title in himself. As a matter of fact the Coal Company entered into possession of the tract. On its books, kept

under the active control and direction of Michael J. Bracken, it was entered as a "Mineral Land" asset of the Company, which immediately mined the "B" prime coal and distributed the net gains to the stockholders. It did not mine the "C" coal after the "B" coal had been exhausted only because it was deemed unprofitable to mine it in 1930 and shortly thereafter. Under these circumstances the five-year limitation prescribed by the Act of 1856, supra, is not applicable. See Quinn v. Gormley, 302 Pa.St. 360, 363, 153 A. 623.

The court is of opinion that the action was instituted in due time irrespective of the matter of possession.

■ The defendants have further asserted that the complaint should be dismissed because it fails to contain an averment that complainant had demanded of the Coal Company that it bring the action and had been refused. This defense was not advanced by a motion to dismiss, as is the ordinary practice. The complaint, it is true, does not allege a demand upon or a refusal of the Coal Company to bring the action in so many words. However, it does set forth allegations which make it plain that such a demand would have been useless. The testimony makes such fact plain, and the court, if it were deemed necessary, would allow the complaint to be amended by the insertion of a direct allegation that such a demand was useless under the conditions prevailing.

■ A third contention on the part of the defendants is that the complaint should be dismissed because no proof was introduced to show that the lease from Marie C. Bracken was not beneficial to the Coal Company. This position is of no weight. If the tract in question was equitably the property of the Coal Company, no benefit could accrue to the Company by the payment of royalty upon its own coal. And beyond this fact, a violation of the by-laws of the Company by its president and secretary is not to be cured even though the Company might not have lost money by the violation.

■ Again defendants claim that no resulting trust was created in the minerals of the tract in question because the first sale, which was entered in the Company's books as a purchase of mineral lands, was deemed insufficient by reason of the Treasurer's advertising only the surface for sale, and that a second sale was engineered for the purpose of perfecting (?) the title. This contention has no merit. The money of the Coal Company was used in the second sale as well as in the first, and when the second deed was delivered the Company had practically exhausted the "B" coal in the tract.

[7] It definitely appearing from the evidence that the power to enter into leases was confined to the directors by the by-laws of the Coal Company, and was not in the president, it practically follows that the purported lease from Marie C. Bracken to the Company, as represented by Paul E. Henise, president, must be declared invalid and vacated, and an accounting be ordered from Marie C. Bracken to the Coal Company.

Let a decree in accordance with the foregoing opinion and findings of fact and conclusions of law be presented.